UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREA T.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 3:18-CV-06019-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her applications for disability insurance and supplemental security income benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred, and the ALJ's decision is reversed and remanded for further administrative proceedings.

I.     ISSUES FOR REVEW

1. Did the ALJ fail to develop the record with respect to Plaintiff's cognitive impairment?
2. Did the ALJ err in finding there were a significant number of jobs Plaintiff could perform at Step Five?
3. Did the ALJ properly evaluate the medical opinion evidence?
4. Did the ALJ err in discounting lay witness testimony?
5. Did the ALJ err in evaluating Plaintiff's symptom testimony?

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

## II. BACKGROUND

On December 18, 2014, Plaintiff filed applications for disability insurance and supplemental security income benefits, alleging a disability onset date of February 14, 2012. AR 63, 387-93, 394-402. Plaintiff's applications were denied upon initial administrative review and on reconsideration. AR 63, 263-65, 266-69, 281-85, 286-92. A hearing was held before Administrative Law Judge ("ALJ") Allen Erickson on May 25, 2017. AR 143-204. In a decision dated November 1, 2017, the ALJ found that Plaintiff was not disabled. AR 60-76. The Social Security Appeals Council denied Plaintiff's request for review on October 15, 2018. AR 1-7.

On December 19, 2018, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 4. Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for additional proceedings. Dkt. 13, p. 18.

## III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

The Ninth Circuit has recognized that in cases that turn on whether a claimant has an intellectual disability and in which IQ scores are relevant to assessing that disability, "there is no question" that a fully and fairly developed record "will include a complete set of IQ scores that report verbal, non-verbal, and full-scale abilities." *Garcia v. Comm'r of Social Sec.*, 768 F.3d 925, 931 (9th Cir. 2014).

The Ninth Circuit's holding was partly based on an earlier version of Listing 12.05, which placed a greater emphasis on the results of IQ testing. *Id.* However, IQ testing remains relevant in determining whether a claimant's intellectual disorder meets the criteria in the present iteration of Listing 12.05. *See* 20 C.F.R. Part 404, Subpt. P, Appx. 1 §§ 12.05(A), 12.05(B).

The Ninth Circuit also found that the importance of IQ scores at step three is not the end of the analysis; IQ testing can play a role in the development of other evidence in the record, for example by influencing the opinions of physicians regarding an individual's ability to work. *Garcia*, 768 F.3d at 931.

1       The ALJ found Plaintiff's organic brain syndrome and mental learning or developmental disabilities were non-medically determinable impairments. AR 67. The ALJ found that there was "inadequate objective evidence" to support a diagnosis for either condition. *Id.* The ALJ found that Plaintiff was able to complete a GED, did not require special education classes in high school, and held multiple jobs. *Id.* The ALJ also noted a statement from Plaintiff's mother denying that her daughter had any developmental problems or learning disabilities, and noted that Plaintiff's cognitive issues improved "dramatically" when she was taking her depression and anxiety medications. *Id.*

      In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: bilateral knee degenerative joint disease; speech disorder; obesity; major depressive disorder; and social anxiety disorder. AR 65. The ALJ also found that Plaintiff had a range of non-severe and non-medically determinable impairments. AR 65-66.

      Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of light work. AR 69. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past work, but determined that there were other light, unskilled jobs Plaintiff could perform; therefore the ALJ determined at step 5 that Plaintiff was not disabled. AR 74-75.

      A. <u>Whether the ALJ sufficiently developed the record</u>

      Plaintiff maintains that the ALJ erred by not ordering intelligence quotient ("IQ") testing to determine whether Plaintiff had a cognitive impairment. Dkt. 13, pp. 3-6.

      The ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))).

This duty is especially important when a claimant suffers from a mental impairment and for purposes of determining onset of that impairment. *See Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (an ALJ's duty to develop the record fully is heightened when the claimant may be mentally ill and thus unable to protect her own interests.)

Under Social Security regulations, a claimant's symptoms will not be found to affect the ability to perform basic work activities unless medical signs or laboratory findings demonstrate the presence of a medically determinable impairment. 20 C.F.R. §§ 404.1529, 416.929. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*

The ALJ erred in finding that the medical record contains inadequate evidence to support a diagnosis for Plaintiff's cognitive impairment. The evidence cited by the ALJ in support of this contention is a brief notation by Plaintiff's physician noting that the medical record establishes a diagnosis of organic brain syndrome with mood disorder, but "did not specify details." AR 819. Plaintiff's treating physician noted a history of brain injury in childhood and included "chronic brain syndrome" among her impairments. AR 801-02.

The record also contains a November 2013 letter from Reldon Jones, M.D., Matthew Freitas, F.N.P, and Ken Erickson, F.N.P., stating that Plaintiff suffers from organic brain syndrome and developmental delay. AR 524-25. The letter states that Plaintiff lacks the cognitive ability to perform self-care, is unable to provide for herself, and that her condition is permanent. *Id.*

| 1 | Tasmyn Bowes, Psy.D. evaluated Plaintiff on April 25, 2012 for the Washington
| 2 | Department of Social and Health Services ("DSHS"). AR 530-39. Dr. Bowes' evaluation
| 3 | consisted of a clinical interview, a mental status examination, and trail making exercises. Dr.
| 4 | Bowes noted the possibility that Plaintiff had a low IQ and observed that she had slowed
| 5 | processing speed and demonstrated a somewhat flawed capacity to make good decisions. AR
| 6 | 531, 534. However, Dr. Bowes opined that based on the results of her mental status examination,
| 7 | Plaintiff did not have a cognitive impairment. AR 539.

On January 7, 2014, Dr. Bowes evaluated Plaintiff again for DSHS. AR 540-53. Dr. Bowes noted that Plaintiff presented with very limited insight and again questioned whether Plaintiff had a low IQ. AR 540. Dr. Bowes stated that the trail making exercises indicated that Plaintiff had "some kind of cognitive impairment", diagnosed her with an unspecified cognitive impairment and stated that additional IQ testing and a neuropsychological evaluation was needed. AR 541-43.

Dr. Bowes assessed Plaintiff a third time on December 10, 2015. AR 781-787. Dr. Bowes again observed that Plaintiff had very limited insight, and questioned whether Plaintiff had a low IQ. AR 782. Dr. Bowes observed that Plaintiff had developmental difficulties, stating that Plaintiff exhibited "extreme naivete" and seemed significantly younger that her stated age. AR 784-85.

As such, the ALJ's finding that Plaintiff's cognitive impairment was non-medically determinable is not supported by substantial evidence.

The ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, substantial evidence supports

the existence of a medically determinable cognitive impairment. However, the record remains ambiguous concerning the precise nature of Plaintiff's cognitive impairment, the extent of the limitations caused by it, and Plaintiff's IQ test results.

Defendant asserts harmless error, and argues that even if IQ testing would have revealed significantly sub-average general intellectual functioning, there is no evidence that Plaintiff's impairment would meet the other requirements of Listings 12.05(A). Dkt. 14, pp. 3-4. Defendant further asserts that the ALJ's decision adequately accounted for Plaintiff's cognitive impairment in the RFC by limiting Plaintiff to performing short, simple instructions, routine tasks, and simple decisions. Dkt. 14, p. 4.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The Ninth Circuit has held "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56).

The absence of IQ testing in this case, when examining physicians have diagnosed a cognitive impairment and recommended such testing, constitutes harmful error. Even if the Court assumed for purposes of this analysis that Plaintiff's cognitive impairment would not meet the criteria of Listing 12.05, the Court is unable to ascertain whether the mental limitations in the RFC are sufficient to accommodate Plaintiff's cognitive impairment. Without the IQ testing and neuropsychological evaluation suggested by Dr. Bowes, recognized as essential by the Ninth

Circuit in another case with analogous facts, the Court would be making a decision with an insufficient foundation. *See Garcia,* 768 F.3d at 933-34 (the fact that IQ test results may create an additional factual basis for the claimant to argue the existence of a disability, and those IQ test results may be interpreted by various medical experts and evaluated by the ALJ, means it is especially difficult for a reviewing court to find harmless error).

The Court also notes that some of the evidence in this case was submitted after the ALJ issued his decision. AR 8-16, 26-51, 52-59, 84-134. The Appeals Council denied review of Plaintiff's claim and opted not to add this evidence as an exhibit. AR 2; *see Brewes v. Commissioner of Social Security*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.)

The evidence submitted to the Appeals Council indicates that Plaintiff has neurological problems that affect her speech and cognitive functions like emotional regulation, along with post-traumatic stress disorder. AR 26-51, 98-134.

The new evidence also contains a DSHS psychological/psychiatric evaluation conducted by Terilee Wingate, Ph.D. on October 31, 2017. AR 52-59. Dr. Wingate stated that Plaintiff might have an intellectual disability; also, Dr. Wingate diagnosed Plaintiff with an unspecified personality disorder. AR 52-53. Dr. Wingate assessed Plaintiff as having a range of moderate and marked mental limitations. AR 54.

This evidence indicates that Plaintiff has several additional mental impairments, along with symptoms that may impact her ability to perform work.

B. <u>Remaining Issues</u>

Plaintiff maintains the ALJ erred in assessing the medical opinion evidence, lay witness testimony, Plaintiff's symptom testimony, and the number of jobs Plaintiff could perform at step five of the sequential evaluation. Dkt. 13, pp. 6-18.

Plaintiff will be able to present new evidence and testimony on remand, and the ALJ's reconsideration of the medical evidence (including the new evidence submitted to the Appeals Council) may impact the assessment of the medical opinion evidence, lay witness testimony, and Plaintiff's symptom testimony. Accordingly, the ALJ shall reconsider this evidence on remand.

The ALJ's re-evaluation of the evidence, and any new evidence concerning Plaintiff's cognitive impairment, may impact Plaintiff's RFC and the review of potential jobs Plaintiff may be capable of performing, as part of the analysis at step five. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is directed to re-evaluate step five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform given the RFC.

C. <u>Remand for Further Proceedings</u>

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, ambiguity exists concerning the nature and extent of Plaintiff's cognitive impairment, as well as the limitations caused by this condition. On remand, the ALJ shall develop the record, including an order for IQ testing and a neuropsychological evaluation to clarify the Plaintiff's medical situation and limitations, and shall re-assess Plaintiff's residual functional capacity accordingly. The ALJ shall also consider the evidence submitted to the Appeals Council in assessing Plaintiff's impairments and the RFC.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he determined Plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to order IQ testing a neuropsychological evaluation to determine the nature and extent of Plaintiff's cognitive impairment. The ALJ shall also evaluate the evidence submitted to the Appeals Council to determine what impact this new evidence has on Plaintiff's residual functional capacity.

Dated this 21st day of October, 2019.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge